**Application of Rudolph S. BLEY.**
**Patent Appeal No. 7215.**

United States Court of Customs and Patent Appeals.

Nov. 5, 1964.

Rudolph S. Bley, Elizabethton, Tenn., pro se (James H. Ewing, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

ALMOND, Judge.

Rudolph S. Bley appeals from a decision of the Board of Appeals affirming the examiner's rejection of all of the claims in appellant's application [1] for a process of spinning viscose rayon yarn. Claims 7, 8, 9, 10 and 12, which are directed to a process of producing high tenacity regenerated cellulose by extruding unripened viscose containing a spinning modifier into a spin bath containing aluminum sulfate, were rejected as unpatentable over the prior art.

In claims 7, 8 and 9 the unripened viscose is characterized by its salt point and in claims 10 and 12 by its degree of polymerization. Claims 7 and 10 are illustrative and read as follows:

"7. A process for producing high tenacity regenerated cellulose products by extruding a substantially unripened viscose having a salt point of at least 7.5 and containing a small amount of a spinning modifier which.

---

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28 United States Code.

[1] Serial No. 647,977, filed March 25, 1957, for "Process of Spinning Viscose."

inhibits the gel swelling of the freshly formed filaments into a spin bath devoid of zinc salts comprising a sulfuric acid solution, aluminum sulfate, and at least one other inorganic sulfate soluble in said sulfuric acid solution, whereby the formation of insoluble products resulting from chemical interaction with hydrogen sulfide during spinning is avoided.

"10. A process for producing high tenacity regenerated cellulose products comprising extruding viscose containing a small amount of a spinning modifier which inhibits the gel swelling of freshly prepared filaments and prepared from cellulose containing less than 25% by weight of molecular chains with a degree of polymerization below 500, and less than 4% by weight of molecular chains with a degree of polymerization below 250, said viscose being prepared from alkali cellulose having a mean degree of polymerization after ripening of at least 450, into a spin bath devoid of zinc salts comprising an acid solution, an aluminum salt soluble in said acid solution, and at least one other inorganic salt soluble in said acid solution, whereby the formation of insoluble products resulting from chemical interaction with hydrogen sulfide during spinning is avoided."

The essence of the claimed invention is spinning viscose containing a spinning modifier in a bath containing aluminum sulfate. Appellant states that zinc sulfate, which is present in a conventional spin bath, results in the formation of undesirable zinc sulfide deposits on the spinning equipment and that these undesirable metal sulfide deposits do not occur when aluminum sulfate is used in place of zinc sulfate. Appellant's specification indicates that an improved yarn is obtained if the viscose or the spin bath or both contain a spinning modifier which inhibits swelling of the freshly formed filaments.

In disclosing spinning modifiers suitable for use in his process, appellant referred to eleven patents all directed to viscose spinning. These patents and the modifier they disclose are listed below.

| Patent | Modifier |
|---|---|
| Cox U. S. 2,535,044 | aliphatic monoamines |
| Cox U. S. 2,535,045 | aliphatic monoamines |
| Cox U. S. 2,536,014 | quaternary compounds |
| Dietrich U. S. 2,696,423 | N-substituted dithiocarbamates |
| Edwards U. S. 2,777,775 | diaryl thioureas |
| Tallis U. S. 2,784,107 | polyethylene polyamines |
| Courtaulds British 755,469 | mercaptothiazoles |
| Courtaulds British 739,072 | dithiocarbamates |
| Cowling U. S. 2,397,338 | polyethylene oxides |
| British Cellophane British 557,218 | polyalkylene ozides |
| Onderzoekingsinstituut British 765,905 | quinoline |

Each of the foregoing discloses spinning viscose in a bath containing zinc sulfate.

The appellant relied upon Richter 2,-598,834, June 3, 1952, for a disclosure of a "green" viscose suitable for use in his process. Richter discloses a process for forming high tenacity viscose rayon fibers by extruding unripened viscose through spinnerets into an acid-salt bath containing sulfuric acid, sodium sulfate and zinc sulfate or an equivalent polyvalent metal sulfate such as the sulfates of iron, magnesium, chromium, cadmium, manganese, nickel and aluminum.

The examiner rejected the claims as unpatentable over Richter, pointing out that Richter discloses that "aluminum sulfate may be *substituted for*, or used in combination with zinc sulfate" (emphasis added). With regard to the claimed molecular chain distribution, the examiner held that the distinction was not patentable because it had not been shown to be critical. The examiner reasoned that the use of modifiers did not patentably distinguish appellant's process over Richter because appellant in his application had admitted that modifiers and their function were well known.

Appellant contends that it is not obvious to spin viscose containing a spinning modifier in a bath containing aluminum sulfate. He argues that since Richter does not mention spinning modifiers, the spinning modifier art cited in appellant's application must be considered as part of the rejection. It is contended that the spinning modifier art teaches that zinc sulfate is an essential component when spinning modifiers are used and thus that it teaches that other sulfates should not be used in combination with spinning modifiers. The solicitor apparently agrees that the eleven patents cited in appellant's disclosure may be considered here.

Four of the eleven patents, the three Cox patents and Dietrich, contain disclosures which are almost identical and will thus be considered together. All four patents state that zinc sulfate is an essential component of the spin bath and that in its absence the modifiers have no effect on spinning and yarn properties. It is further stated that part of the zinc sulfate may be replaced by "salts of divalent metals known to reinforce or supplement the action of zinc sulfate * * * such as ferrous sulfate, manganese sulfate, nickel sulfate, or chromic sulfate * * *." This group of patents does not specifically state that aluminum sulfate should not be used with the modifiers. There is, however, as appellant contends, a strong implication that zinc sulfate is the only known salt which can be used in conjunction with spinning modifiers.

The Onderzoekingsinstituut patent indicates that the presence of zinc sulfate in the spin bath is necessary. In Edwards and the two Courtaulds patents, it is stated that zinc sulfate is preferably present in the spinning bath but there is no teaching that the presence is critical. All of the examples of these three patents do, however, have zinc sulfate present in the spin bath. Cowling states that the spinning modifier prevents jet incrustation during spinning in a zinc sulfate containing bath. In all of the examples, zinc sulfate is a necessary component. Tallis indicates that the spin bath in which the modifier is used may contain zinc sulfate. All of the examples indicate that zinc sulfate is used. British Cellophane indicates that the bath should contain at least one metallic salt which may be zinc sulfate. Zinc sulfate is used in all of the examples.

All of the references specify a preference for zinc sulfate. On the other hand, none of the references state that aluminum sulfate may not be used in place of zinc sulfate. The Cox patents and Dietrich may be construed to imply that only zinc sulfate may be used and that all other sulfates, including ·aluminum sulfate, will not operate properly. However, Cowling and Tallis give no indication that the use of zinc sulfate is critical and British Cellophane suggests that metallic salts other than zinc sulfate may be used. Our analysis of the references fails to convince us that there is any such negative teaching as would dissuade one from using a spinning modifier in the Richter bath containing aluminum sulfate rather than zinc sulfate.

Appellant relies on In re Sutton et al., *211 F.2d 582, 41 CCPA 816* and Mathieson Alkali Works, Inc. v. Coe, *69 App. D.C. 210, 99 F.2d 443 (1938)*, in support of his contention that the references should not be combined because of the teaching that zinc sulfate in combination with the modifiers is essential. In both Sutton and Mathieson the prior art could be construed as suggesting that the claimed process would produce undesirable results. In the present case,

the only negative teaching which can be attributed to the prior art is that the combination of a modifier with an aluminum sulfate bath *might not* yield rayon yarn of any better properties than the aluminum sulfate bath alone. Since there is a clear distinction between a teaching that the addition of an element may give no improvement to an operable process and a teaching that the addition of an element will render the process inoperative, we do not feel that Sutton and Mathieson are apposite.

We agree with the examiner and the board that there is nothing in the cited prior art which would lead one away from using spinning modifiers in an aluminum sulfate containing spinning bath. On the contrary, the fact that spinning modifiers and their function are well known would make it obvious to use them in the aluminum sulfate containing spinning bath suggested by Richter.

Appellant also contends that his process is patentable because the prior art does not disclose spinning green viscose having the same degree of polymerization and salt point as that defined by the claims. The record contains no indication of the significance of this limitation. Appellant's specification states only that

" 'Green,' i. e., substantially unripened viscose suitable for use in my improved spinning process is described, for example, in U. S. Patents No. 2,581,835 and No. 2,589,834 [Richter]."

The only mention of degree of polymerization in appellant's application is found in the claims. In answer to appellant, the board stated, " * * * there is no basis to assume that the young viscose in Richter would be essentially different than that claimed herein." The solicitor contends:

"Since unripened viscoses are known to have salt index of about 7 or higher (patent No. 2,535,044), it would appear that Richter's young viscose of salt-test value between 8 and 18 is the same or substantially the same as appellant's 'green' viscose 'of salt-point of about 8.5' * * *."

We agree that Richter's viscose would appear to be substantially the same as appellant's. However, even if it does vary in some degree from Richter's viscose, there is no indication that the variation is critical.

For the foregoing reasons, we affirm the decision of the Board of Appeals.

Affirmed.